Section 1 of Act No. 188, Pub. Acts 1899, as amended (the Michigan inheritance tax law), being 1 Comp. Laws 1929, § 3672 (Stat. Ann. § 7.561), imposes a tax on the transfer of any property, real or personal, of the value of $100 or over to persons or corporations not exempt by law in this State from taxation on real or personal property, when the transfer is by will or intestate laws, et cetera. On an appeal from a judgment of the circuit court for the county of Kent we are asked to construe that part of section 2 of this act, being 1 Comp. Laws 1929, § 3673, as amended by Act No. 161, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3673, Stat. Ann. § 7.562), which reads as follows:
"(a) Where the person or persons entitled to any beneficial interest in such property shall be the *Page 228 
grandfather, grandmother, father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, or to or for the use of any child or children adopted as such in conformity with the laws of this State or any other State or country, of the decedent grantor, donor or vendor, or for the use of any persons to whom such decedent grantor, donor or vendor stood in the mutually-acknowledged relation of a parent: Provided, however, That such relationship began at or before the child's seventeenth birthday and continued until the death of such decedent grantor, donor or vendor, or to or for the use of any lineal descendant of such decedent grantor, donor or vendor, such transfer of property of the clear market value of five thousand dollars shall be exempt from all taxation under this act."
The precise question is whether one Elizabeth Ann Bottje and one William Gay Bottje (hereinafter referred to as the Bottje children) come within the class of persons referred to in the above-quoted section 2 as being "persons to whom such decedent grantor, donor or vendor stood in the mutually-acknowledged relation of a parent: * * * or * * * any lineal descendant of such decedent grantor, donor, or vendor."
Appellants claim that the Bottje children come within such classification and therefore are entitled to an exemption and a lower rate of inheritance tax than would otherwise be imposed on certain bequests to them, by virtue of other provisions of the act. The circuit court held contrary to appellants' claim.
Each of the Bottje children was given approximately $90,000 by the last will and testament of Mrs. Netta Cole Gay, to whom they were not related either by blood or by marriage. They are the children of one Ann Pratt Bottje, whose mother was *Page 229 
a cousin of one William H. Gay, who at the time of his death was the husband of Netta Cole Gay, the testatrix.
Appellants claim that under a liberal construction of the inheritance tax law the Bottje children are entitled to the preferred classification under section 2 of the act, for the following reasons:
1. That they are lineal descendants of Netta Cole Gay;
2. That "parent" should be liberally construed to include "grandparent;"
3. That the facts establish that the Bottje children stood in the mutually-acknowledged relation of children of Mrs. Gay.
(1) Ann Pratt Bottje, the mother of the Bottje children, had come to live with Mrs. Gay, as an orphan, at the age of 15. She was never legally adopted by Mrs. Gay. Appellants and appellees both agree that the decedent and Ann Pratt Bottje stood in the mutually-acknowledged relation of parent and child and that this relation continued to the time of death of the decedent. On the strength of the fact that Ann Pratt Bottje stood in the mutually-acknowledged relation of child to Mrs. Gay, within the inheritance tax law, appellants argue that her children should be classed as lineal descendants of Mrs. Gay. Cases relied upon by appellants to support this claim have no application to the instant case. In those cases there had been a legal adoption. We do not enlarge the legal as well as generally-accepted meaning of "lineal descendant" to include the Bottje children as lineal descendants of Mrs. Gay.
(2) Appellants claim that the Bottje children are persons to whom Netta Cole Gay stood in the mutually-acknowledged relation of a grandparent, and for that reason are entitled to the preferential classification *Page 230 
afforded those to whom a decedent stands in the mutually-acknowledged relation of a parent. In that respect the language of the act is clear and unambiguous. Had the legislature intended to include grandparent in the exemption the act would read "mutually-acknowledged relation of a parent or grandparent." If the act is to be construed as urged by appellants the change must come by legislation, not by judicial fiat. Plain, unambiguous language in a statute leaves no room for judicial construction and must be given effect according to the plain meaning of the words. Smith v. City Commission of GrandRapids, 281 Mich. 235.
(3) Appellants further contend that under the facts and circumstances of the case the Bottje children were persons to whom Netta Cole Gay stood in the mutually-acknowledged relation of a parent. This requires a consideration of the facts.
At the age of 15, Ann Pratt (Bottje), later the mother of Elizabeth Ann Bottje and William Gay Bottje, came to live with William H. Gay and his wife, Mrs. Netta Cole Gay, as an orphan child. There was no formal adoption but the proofs fully sustain the finding of the circuit judge that Ann Pratt Bottje stood in the mutually-acknowledged relation of a daughter to Mrs. Gay, within the meaning of the inheritance tax law, from the time she became a member of the family in 1911 at the age of 15 until the time of the death of Mrs. Gay in 1941. The circuit judge found that the testimony clearly established that Ann Pratt Bottje's children stood in the mutually-acknowledged relation ofgrandchildren (not children) to Mrs. Gay, and we are in full accord with that conclusion.
A lifelong intimate friend of Netta Cole Gay testified that Mrs. Gay always considered Ann Pratt (Bottje) as her daughter, and that Mrs. Gay looked *Page 231 
upon Mrs. Bottje's children "as I would look upon my daughter's children." She testified:
"Mrs. Gay's relations with Ann's children were the same as my daughter's children would be with me. * * * The two Bottje children, Elizabeth Ann and William Gay, were treated just as my grandchildren were treated by me and I think Mrs. Gay considered them as grandchildren although she never called them grandchildren, but Mrs. Bottje was considered a daughter, and I don't know how otherwise you could treat the children than grandchildren."
The foregoing is typical of the proofs adduced by appellants. Ann Pratt (Bottje) after her marriage in 1918 never lived with Mrs. Gay. She and her husband had their own home and her children were brought up in her own home, in no way under the parental control of Mrs. Gay. Elizabeth Ann Bottje testified:
"I lived in the home of my parents from the time I was a youngster until I went away to school. That was my home except during a couple very short periods when there was illness in the family and I lived with Mrs. Gay for perhaps two or three weeks at a time. That was because of necessity. My father and mother are still living and there is a good wholesome relationship of father and daughter and mother and daughter. I hold my mother out as my mother and she holds me out as a daughter. * * * I didn't hold out to the world or anybody else in this community that Mrs. Gay was my mother. Mrs. Bottje was my mother and Mr. Bottje my father. I have had quite a liberal education. I know there is no such thing as a third parent but there can be a third person in the background that is a very definite part of your life, like Mrs. Gay particularly, who thought a lot of me and her feelings toward me prompted the liberal gifts and education *Page 232 
that she gave me. I didn't hold her out as mother to the neighbors or my chums. * * * It was common knowledge in the community surrounding my home that I was not a daughter, or neither was Mrs. Gay holding me out to be her daughter."
The testimony does not preponderate in favor of appellants that the Bottje children stood in the mutually-acknowledged relation of children of Mrs. Gay. The decedent was a wealthy woman who never had any children of her own. Her husband died in 1920. Elizabeth Ann Bottje was born in 1919 and William Gay Bottje was born in 1925. Until her death in 1941 Mrs. Gay lavished her affection, her gifts and her wealth on these two children as they grew up in the home of their parents. She gave them substantial bequests in her will. The record is convincing that her relation toward them might be considered as a grandmother, but it fails to establish the mutually-acknowledged relation of parent and child.
The judgment is affirmed, with costs to appellees.
STARR, C.J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred. *Page 233