---

(13 Misc. Rep. 480.)      In re RAY'S ESTATE.

(Surrogate's Court, Madison County. July, 1895.)

LEGACY TAXES—EXEMPTION.

    Laws 1892, c. 399, § 2, exempting from the transfer tax a legacy to the "husband of a daughter" of testator, includes the husband of a deceased daughter, though he has remarried.

Proceeding to subject to the transfer tax the estate of Lydia C. Ray, deceased.

M. E. Barlow, for George H. Munger.

KENNEDY, S. Lydia C. Ray died at Canastota, in this county, May 12, 1893, leaving, her surviving, neither husband nor descendants. She left personal property, the value of which, after deducting the payments of debts and funeral expenses, amounted to the sum of $9,353, and real estate of the value of $450. She left a will dated March 24, 1885, bequeathing and devising the use of all her property to her son-in-law, George H. Munger, with the right to appropriate so much of the principal as circumstances might require for his comfort, convenience, and support; the remainder, at his death, to go to Colgate University. Munger married the only child of the testatrix in 1863. This daughter died April 12, 1879, leaving no children. From the death of Mrs. Ray's husband, in 1873, until her death, in 1893, she and said Munger have lived together, caring for each other as mother and son.

It is claimed on the part of the state that the legacy to Mr. Munger is liable to a transfer tax, for the reason that, said Munger's wife having died prior to the death of the said testatrix, he is not the "husband of a daughter." We do not think that a proper construction of the statute will justify this conclusion. The language of the act in relation to taxable transfers of property, so far as it applies to this proceeding, is as follows:

"When the property or any beneficial interest therein passes by any such transfer to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, * * * such transfer of property shall not be taxable under this act, unless it is personal property of the value of ten thousand dollars or more." Laws 1892, c. 399, § 2.

If it be conceded that, in a technical sense, a man whose wife is dead is not a husband, still, in a sentimental and social sense, by common usage as well as by statute, such a person, upon the settlement of estates especially, and in some other matters generally, is recognized and designated as "husband" instead of "widower," which perhaps more accurately describes his relation to his dead wife; but, if the wife survives the husband, she is described sometimes as "wife" and sometimes as "widow." Thus, letters of administration in cases of intestacy must be granted, in certain cases, to the surviving "husband" or "wife," although previous to 1893, if the wife survived the husband, letters were to be issued to the "widow," but never to a "widower." The Code of Civil Procedure provides that if a man having a family die, leaving a "widow" or minor child or children, certain enumerated articles are to be set aside for them, and if a married woman die, leaving surviving her a "husband" or minor child or children, the same class of articles and amount of property are to be set apart for them, with the same effect and for their benefit. Without exception, the statutes of this state, the opinions of its courts, and all text-books discussing the legal rights of the husband where the wife is dead invariably describe and designate him as a "husband," the word "widower" never being used for that purpose. The word "husband" or "surviving husband" has become so imbedded in our statutes and in all legal phraseology that it has the same force and meaning and the same legal effect as if he had been described as "widower." If the legislature had intended not to use the word "husband" in the same sense as it has always been used by the laws of this state and by its courts, it would have made its meaning clear, definite, certain, by saying the "husband of a daughter, if she be living." By omitting to restrict this exemption to a husband whose wife was living, it seems very clear that the word "husband" is here used in its general and accepted sense, which not only common usage but the statutes of this state make use of, and as the word is ordinarily used and understood in speaking of a surviving "husband."

But it is urged that, the transfer act having made use of the words "wife" or "widow" of a son, and omitted to say "husband" or "widower" of a daughter, there is valid ground to claim that it was not intended that the husband of a daughter should be exempt unless the daughter was living, upon the theory that a "husband" is

a man who has a wife, but that in case his wife is dead he is not a "husband," and not, therefore, within the exemptions of the law. Perhaps there might be some force in the suggestion were it not for the fact that in all our statutes sometimes the word "wife" and sometimes the word "widow" is used, referring to a woman whose husband has died, both words meaning in the settlement of estates the same person, who is entitled to the same legal rights; while, upon the other hand, the word "widower" is never used to designate a man whose wife has died, but always the word "husband." So that, when the act says "wife" or "widow" of a son, we think it clear that it was intended that the husband of a daughter, though she be dead, is entitled to the same exemptions as if his wife were living. No satisfactory reason can be urged why the "widow of a son" should be exempt, and the "husband of a dead daughter" not exempt. Both sustain the same relative relation to the decedent. Both should be equally entitled to be exempted from the operation of the law. Neither justice nor necessity gives to the widow of a son any superior claim to be exempted from this taxation, and both should stand upon the same footing. If the word "widower" had ever been used in the statutes to describe a man whose wife were dead, there might be some grounds to draw the distinction claimed by the state in this proceeding. The absence of the word "widower" does not suggest that the word "husband" was used in any limited or restricted sense, but, upon the other hand, it is to be given its ordinary legal signification, which custom and long usage and the law and the courts have given it.

For all legal purposes, the man whose wife is dead continues to be her husband, and such he is declared to be by law, and as "husband" he is entitled to certain rights in her property. A misdescription in the name of a person or corporation to whom a devise or bequest is made is of no avail, provided the devisee is clearly and distinctly known. But, if a claim of the state in this proceeding is correct, certain rights conferred upon the "husband," or any legacies to him as "husband," could not be enforced, because he is not correctly described as "widower." Wills take effect upon the death of the testator, but, upon the construction claimed in this case, all legacies given to a "wife" must lapse and be void, unless given to a "widow," because there would be no "wife" in existence to take the property. For centuries the word "husband," and not the word "widower," has been used in law to describe a person whose wife was dead; and from this long usage we think it clear that the originators and draftsmen of the transfer act used the word with the same force, effect, and meaning that it had theretofore had, and did not intend to use it in a technical and restricted sense, but designed to place the husband of a daughter on the same footing and equality as the wife or widow of a son. Had the word "wife" alone been used, it might have been strongly argued that the legislature intended to limit the exemption to children by marriage whose wives or husbands were living at the death of the testator or intestate; but, having removed all uncertainty in this respect by saying that the "wife or widow" of a son shall be exempt, we think it equally

clear from the manner in which the word "husband" has been used and construed in the statutes that it is not intended to treat them differently and to exclude the husband of a deceased daughter from the benefits of the act, for the same description and phraseology are used in designating the rights of the husband in the transfer act as in the other statutes of the state.

Thus far we had written when first apprised that said Munger had remarried during the lifetime of the testatrix, and was living with his wife at the time of Mrs. Ray's death. As we have construed the word "husband" to mean the same as if the statute had said "husband" or "widower" of a daughter, we are confronted with the definitions of the word "widow" as stated in the various dictionaries, to wit: "An unmarried woman whose husband is dead;" "one who has lost her husband by death, and who has not taken another;" "whose husband is dead, and who remains unmarried,"—and by the argument, based on these definitions, that in order to be a widow she must remain unmarried. The question at issue is not whether these definitions are correct, but what is the legal import, meaning, effect, and object of the words "wife or widow of a son," or "husband of a daughter," as these words are used in this and other statutes of this state, or, if the language made use of to express the intention of those who prepared and passed the law is not clear, what construction will best accomplish the design. The fact that the statute itself has not made remarriage during the lifetime of the ancestor a bar to exemption from the tax is some evidence that it was not so intended to operate, for in many cases such persons would have a family to support which would be benefited by the exemption, and this fact may have been one of the reasons that influenced the legislature to adopt this provision. Again, a legacy would not ordinarily be given to the "widow" of a son, or to the "husband" of a deceased daughter, were it not for the fact that the relation of son-in-law or daughter-in-law continued or was supposed to exist by legal fiction, if not in fact. A woman, though the wife of another, is still the widow of her former husband; though married to another woman, the husband is still the widower of his former wife; and, this being so, both come, not only within the language of the law, but within its just and reasonable construction. The law invests them with the name of "husband" or "wife" or "widow" for certain legal purposes, and under these names, although the designation may not come within the definition of the dictionary, property may vest in them, whether it comes to them by legacy or otherwise. Notwithstanding the definitions of the words "wife," "widow," and "husband," we apprehend it is not our duty to accept them in place of the statutes of this state, which make use of these words, whether correctly or not, to designate persons entitled to certain legal rights. The words "wife," "widow," and "husband" have obtained a legal use and significance in the settlement of estates which may not correspond to the technical definition of the lexicographers, but it is the duty of courts to give that effect to these words which long use and custom have sanctioned. Until the legislature has removed all doubt by plainly saying that the

"husband of a daughter, if she be living," or the "widow of a son, if she be unmarried," are exempted from the tax, courts are justified in giving that interpretation to the transfer tax act which will make effective the objects of the law, and confer upon heirs and legatees the benefit which the legislature intended. An order will therefore be entered exempting the beneficial interest of said Munger from taxation.

Ordered accordingly.